IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES BEARDEN AND SHEILA BEARDEN,   )
individually and on behalf of all others similarly  )
situated,   )
     )
     **Plaintiffs,**   )
     )
v.   )   **Case No. 3:09-01035**
     )   **Judge Trauger**
HONEYWELL INTERNATIONAL INC.,   )
     )
     **Defendant.**   )

## MEMORANDUM

Pending before the court is the defendant's Motion to Strike Class Allegations and

Motion to Dismiss the First Amended Complaint (Docket No. 27), the plaintiffs' response

(Docket No. 33), and the defendant's reply (Docket No. 36).  For the reasons discussed below,

the defendant's motion will be granted in part and denied in part.

## BACKGROUND

This is the defendant's second combined Motion to Strike and Motion to Dismiss.  The

court previously dismissed a number of the plaintiffs' claims and struck certain class action

allegations, after which the plaintiffs filed their First Amended Class Action Complaint ("FAC").

(Docket No. 26.)

The central factual allegations have not changed.  On May 8, 2008, plaintiffs James and

1

Sheila Bearden moved into a newly constructed home in Nashville, Tennessee.[1]  Two model F300 electronic air cleaners, manufactured by defendant Honeywell International Inc. ("Honeywell"), were installed in the house's heating system.

The plaintiffs allege that they relied on the recommendation of Daryl Bennett of Lebanon Heating and Air when deciding which air cleaner to install.  (Docket No. 26 ¶ 9.)  Bennett allegedly "based his decision to provide Honeywell F300's to the Beardens on Honeywell's written materials, including the manual," (*id.* ¶ 11), and he advised the plaintiffs that they should run the air cleaners constantly for a month or so after moving in.  (*Id.* ¶ 13.)  Although Bennett "discussed the benefits of the F300," he did not "address the ozone generated by the F300's." (*Id.* ¶ 61.)

The plaintiffs allege that, within days of moving in, Sheila Bearden ("Bearden") developed a respiratory illness.  Over the next several months, she suffered sore throats, coughing, fatigue, and other troubling symptoms.  She saw multiple doctors, but their diagnoses and treatments were ineffective.  By November 2008, Bearden had allegedly developed a hypersensitivity to smells and everyday chemicals.  This became so severe that she "could not shop in most stores without feeling intense pain and could not use or be near certain cosmetics or other chemicals." (*Id.* ¶ 43.)  She "experience[d] pain while working at the computer and talking on the phone," and it became difficult for her to spend time in the house.  (*Id.*)  The plaintiffs allege that, in six months, Bearden went from being a healthy and active person to being "filled

---

[1] Unless otherwise noted, the allegations are drawn from the plaintiffs' First Amended Class Action Complaint (Docket No. 26).

2

with pain, fear and anxiety." (*Id.* ¶ 46.)

On or around November 18, 2008, while searching for information about air contaminants, Bearden read that electronic air cleaners can contribute to poor indoor air quality. At that point, the plaintiffs permanently turned off their air cleaners. Bearden's health problems continued, however, and she and her husband were forced to move out of their house for several months. The plaintiffs allege that Bearden's symptoms have "lessened to some degree since she turned off her air cleaners," although she continues to suffer from hypersensitivity to "colognes, cleaning supplies, plastics, fuel, fabrics, printed materials and other products containing chemicals that are a part of everyday life." (*Id.* ¶¶ 58-59.)

According to the plaintiffs, Bearden's health problems were caused by ozone. Ozone is a molecule consisting of three oxygen atoms and is emitted by certain types of electronic air cleaners, including the F300. The plaintiffs allege, citing EPA documents and various articles, that ozone exposure can cause breathing difficulties, lung damage, and chemical hypersensitivity. (*See id.* ¶¶ 77-86.) In this case, the effect was allegedly magnified because Bearden exercised indoors, slept within 60 inches of a vent that distributed air from the air cleaners, and owned certain products, including cosmetics, that reacted with ozone to release air contaminants.

The product data sheet that Honeywell distributed with the F300 claimed that the air cleaner "contributes .005 to .010 ppm [parts per million] of ozone to the indoor air." (*Id.* ¶ 64.) This equals 5 to 10 parts per billion (ppb). The document also notes that "[t]he U.S. Food and Drug Administration and Health and Welfare Canada recommend that indoor ozone

3

concentration should not exceed .050 ppm," or 50 ppb.  (*Id.*)  The plaintiffs allege that the defendant has understated the amount of ozone produced by the F300.  They cite a study published by the magazine *Consumer Reports* that found that the F300 actually generates ozone levels of between 25 and 50 ppb.

The plaintiffs allege that the defendant's failure to accurately label the F300's ozone output and to warn of ozone's deleterious effects led to Bearden's health problems.  They assert claims for: (1) strict liability for failure to warn; (2) negligent failure to warn; (3) violation of the Tennessee Consumer Protection Act; (4) fraudulent concealment; (5) fraud; (6) negligent misrepresentation; (7) violation of the Magnuson-Moss Warranty Act; and (8) unjust enrichment.

The plaintiffs have asserted Claims 4 through 8 on behalf of a putative class.  The class is defined as "all customers in the United States who have purchased Honeywell F300 Series Electronic Air Cleaners," but it expressly excludes "anyone other than Plaintiffs seeking to recover for physical injuries caused by F300's."  (*Id.* ¶ 100.)  The plaintiffs seek "the recovery of consideration that . . . members of the Class paid to purchase the F300's."  (*Id.* ¶ 104.)

In response to the defendant's first Motion to Dismiss and Motion to Strike, the court: (1) dismissed the plaintiffs' fraud claims without prejudice because they failed to adequately plead reliance; (2) dismissed two claims that were improperly brought under New Jersey law; (3) dismissed the Magnuson-Moss class claim without prejudice because the plaintiffs failed to allege that they gave sufficient notice to the defendant, as required by the statute; and (4) struck the class allegations because the individual fraud claims had been dismissed and because the unjust enrichment claim, on its face, required individualized inquiry regarding each absent class

member.[2]  (*See* Docket No. 24.)  The plaintiffs have added new allegations to their FAC in an attempt to fix the defects in their fraud claims and Magnuson-Moss class claim.

## ANALYSIS

The defendant has filed a Motion to Dismiss and Motion to Strike Class Allegations, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).

## I.     Motion to Dismiss Standard

The Federal Rules of Civil Procedure require plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed R. Civ. P. 8(a)(2).  In deciding a motion to dismiss under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  The court must assume that all of the factual allegations are true, even if they are doubtful in fact.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In contrast, legal conclusions are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).

Generally, a complaint does not need to contain "detailed factual allegations," although its allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "Blanket assertions" or a "formulaic recitation of the elements of a cause of action" are not sufficient.  *Twombly*, 550 U.S. at 555, 556 n.3.  In other words, "a complaint

---

[2] The FAC again includes an unjust enrichment claim brought on behalf of the class.  The plaintiffs did not, and indeed could not, cure the defects with this class claim.  Accordingly, the court will again strike the class allegations regarding this claim.

5

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## II.    Magnuson-Moss Claim

The plaintiffs have asserted a class claim under the Magnuson-Moss Warranty Act (the "Act"), 15 U.S.C. § 2301 *et seq.* The court previously held that the plaintiffs did not sufficiently allege that they satisfied the statute's notice requirement. (Docket No. 24 at 15-17.) The defendant argues that the FAC has not fixed this problem; it also argues that the individual Magnuson-Moss claim should be dismissed because the plaintiffs now fail to plead an underlying state-law implied warranty claim. (Docket No. 28 at 8, 13.)

The Act provides a right of action for consumers who are damaged by a manufacturer's breach of warranty. *Id.* § 2310(d). It requires potential class action plaintiffs to give the defendant notice that they intend to bring suit on behalf of a class:

> No action . . . may be brought under subsection (d) for failure to comply with any obligation under any written or implied warranty . . ., and a class of consumers may not proceed in a class action under such subsection . . ., unless the [defendant] is afforded a reasonable opportunity to cure such failure to comply. In the case of such a class action . . ., such reasonable opportunity will be afforded by the named plaintiffs *and they shall at that time notify the defendant that they are acting on behalf of the class.*

15 U.S.C. § 2310(e) (emphasis added).

As the court noted in its previous decision, the language of the statute is mandatory. A

6

class action "may not be brought" unless the defendant was given "reasonable opportunity to cure" the problem, and the named plaintiffs "*shall* at that time notify the defendant that they are acting on behalf of the class." *Id.* (emphasis added); *see also Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 U.S. Dist. LEXIS 112971, at *32-33 (N.D. Cal. Dec. 4, 2009) (dismissing a class Magnuson-Moss claim because "Plaintiffs once again have failed to allege that they provided adequate notice to [the defendant] that they were acting on behalf of the class prior to filing suit.").

Here, Bearden wrote in a February 2009 email to the defendant that she would "begin looking for an attorney" to address her dissatisfaction with the air cleaners. (Docket No. 1 ¶ 98.) This email did not mention that she intended to bring a class action. Then, in April 2009, Bearden filed a complaint with the United States Consumer Product Safety Commission detailing her problems with the F300 and noting that ozone exposure "could be a hidden health issue for thousands." (*Id.* ¶¶ 204-05.) Bearden directed the Commission to send this complaint to Honeywell with her name attached. (*Id.* ¶ 204.)

The plaintiffs argue that these two communications were enough to give "both actual and constructive notice" that Bearden was acting on behalf of a class. (Docket No. 33 at 11.) The court disagrees. Bearden never explicitly told Honeywell that she was "acting on behalf of the class," 15 U.S.C. § 2310(e), and a regulatory complaint stating simply that a product defect "could" harm numerous people does not provide notice, constructive or otherwise, that the consumer complainant is planning to sue on behalf of those people.

The plaintiffs cite this court's recent decision in *Smith v. Pfizer, Inc.*, No. 3:05-0444,

7

2010 U.S. Dist. LEXIS 14909 (M.D. Tenn. Feb. 19, 2010), for the proposition that "the simple filing of a [civil] complaint puts defendants on notice under § 2310(e)," (Docket No. 33 at 12), but *Smith* is inapposite. In that case, the court construed a Tennessee statute that provides that a buyer claiming breach of warranty "must within a reasonable time after he discovers . . . any breach notify the seller of breach or be barred from any remedy." Tenn. Code Ann. § 47-2-607(3)(a). The court held that, in personal injury cases, this did not require plaintiffs to give separate, pre-suit notice of their claims. *Smith*, 2010 U.S. Dist. LEXIS 14909, at *34-40. This was because "[n]othing in the plain text of the statute indicates that a lawsuit cannot serve as this notification." *Id.* at *35. In contrast, the plain text of § 2310(e) reveals that notice must be given *before* the suit is filed – the statute states that "[n]o action . . . may be brought" unless the plaintiff complies with the given requirements.

The plaintiffs also point to *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751 (N.D. Ohio 2001), in which the district court allowed a car purchaser's Magnuson-Moss claim to survive because the plaintiff "alleged [that the] defendant knew of the allegedly defective instrument panel at the time of sale of plaintiff's car." *Id.* at 754. The plaintiffs argue that Honeywell's alleged knowledge that the air cleaners were defective when it sold them is enough, standing alone, to satisfy the Act's notice requirement. First, it is unclear whether a defendant's independent knowledge of a product defect can satisfy the statutory requirement that the "named plaintiffs" must affirmatively "afford[]" the defendant an opportunity to cure the defect. Regardless, such knowledge clearly does not satisfy the requirement that class action plaintiffs give notice that they are acting on behalf of a class. Knowledge of a product defect and

knowledge that a specific party is acting as a representative plaintiff are two unrelated things.
Because the plaintiffs here failed to give proper notice, as required by statute, they cannot
maintain their Magnuson-Moss claim on behalf of the class.[3]

The plaintiffs' individual Magnuson-Moss claim is also defective, because they do not
assert an underlying state-law warranty claim. "The Act does not provide an independent cause
of action for state law claims, only additional damages for breaches of warranty under state law."
*Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005) (citing
*Walsh v. Ford Motor, Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986)); *see also Schimmer v. Jaguar
Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (noting that the Act "allows consumers to enforce
written and implied warranties in federal court, borrowing state law causes of action"); 15 U.S.C.
§§ 2301(7), 2310(d)(1) (allowing suit by consumers damaged by a violation of an "implied
warranty" and defining "implied warranty" as one "arising under State law"). Thus, to recover
under the Magnuson-Moss Act for the breach of an implied warranty, the plaintiffs must assert a
viable state-law warranty claim. *Fedrick,* 366 F. Supp. 2d at 1200 n.14. The initial Complaint
asserted an implied warranty claim under New Jersey law, (Docket No. 1 ¶¶ 179-89), which the
court dismissed. The plaintiffs have not replaced that claim in their FAC.

The plaintiffs argue that state law regarding implied warranties is irrelevant, because

_____

[3] The plaintiffs argue that it is premature for the court to inquire into the sufficiency of
their notice to Honeywell. (Docket No. 33 at 11 (citing *In re Whirlpool Corp. Front-Loading
Washer Prods. Liab. Litig.*, No. 1:08-wp-65000, 2009 U.S. Dist. LEXIS 102468, at *11-12 (N.D.
Ohio Nov. 3, 2009)).) In its previous Order, the court gave the plaintiffs an opportunity to plead
facts constituting such notice. They are unable to do so. It is appropriate for the court to decide
the matter when the pleadings show, on their face, that no notice was given.

9

their Magnuson-Moss claim is based on "a written warranty in the Owner's Manual" and because Honeywell "extended to them, as consumers, a limited express warranty covering defects in workmanship and materials." (Docket No. 33 at 13.) The FAC, however, contains no allegations regarding any express warranty. In fact, the plaintiffs' Magnuson-Moss claim is explicitly premised on the defendant's "breach of its *implied* warranties." (Docket No. 26 ¶ 209 (emphasis added).) The plaintiffs cannot create an express warranty claim in their response brief when the FAC contains no supporting allegations.

Thus, the court will dismiss the plaintiffs' Magnuson-Moss claim. Class allegations regarding this claim will be stricken with prejudice. The court will grant leave to amend the FAC to assert any applicable Tennessee implied warranty claims or to add allegations regarding an express warranty.

### III.    Fraud Claims

The defendant also argues that the plaintiff's fraud, fraudulent concealment, and negligent misrepresentation claims should be dismissed. (Docket No. 28 at 10-13.)[4]

First, the defendant claims that the affirmative fraud and negligent misrepresentation claims are defective because the plaintiffs' "reliance is ultimately on an omission rather than an

---

[4] The court previously dismissed these claims without prejudice because the plaintiffs failed to adequately plead reliance, which is an element of all three claims. In the FAC, the plaintiffs have alleged that the contractor who installed the air cleaners read the relevant documents and, on that basis, recommended the F300 the plaintiffs. They also allege that Honeywell knew that consumers would ultimately rely on the representations contained in the product documentation. This is sufficient to show reliance. *See Jenkins v. Brown*, No. M2005-02022-COA-R3-CV, 2007 Tenn. App. LEXIS 767, at *42 (Tenn. Ct. App. Dec. 14, 2007). The defendant does not argue otherwise.

10

affirmative statement." (*Id.* at 11.) But the plaintiffs allege that Honeywell affirmatively misstated the air cleaners' ozone output. They allege that the contractor who recommended the F300 to the plaintiffs "would not have selected the F300 for the Beardens had he received accurate materials *setting out the true ozone levels produced by F-300's* and health issues associated with those levels." (Docket No. 26 ¶ 11 (emphasis added).) Although part of this allegation deals with the omission of information regarding ozone's health effects, the rest of it involves the affirmative misrepresentation regarding ozone output. This is enough to support a claim that the plaintiffs, indirectly through the contractor, relied on the defendant's affirmative statements.[5]

Second, the defendant argues that the fraudulent concealment claim should be dismissed because, under Tennessee law, it had no duty to disclose information regarding ozone's health effects. In Tennessee, "'the tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury.'" *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (quoting *Chrisman v. Hill Home Dev., Inc.* 978 S.W.2d 535, 538-39 (Tenn. 1998)).

There are two lines of Tennessee cases regarding a party's duty to disclose information. One line originates with an 1885 decision in which the Tennessee Supreme Court held that a

---

[5] This is especially true because the F300's true ozone output level was allegedly 50 ppb. The F300 product data sheet explicitly stated that the FDA recommends that indoor ozone concentration should not exceed 50 ppb. Certainly, if the contractor knew that the unit emitted 50 ppb of ozone, that knowledge might have caused him to reevaluate his recommendation.

duty to disclose arises only in three "distinct" circumstances: (1) "where there is a previous definite fiduciary relation between the parties," (2) "where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other," and (3) "where the contract or transaction is intrinsically fiduciary and calls for perfect good faith." *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 425 (1885). The Sixth Circuit adopted the *Domestic Sewing* formulation in *Shah*. 338 F.3d at 571. The parties agree that the plaintiffs' relationship with Honeywell does not fall into any of these three categories.

But there is a competing line of Tennessee cases, originating with *Simmons v. Evans*, 206 S.W.2d 295 (Tenn. 1947), that prescribes a broader duty to disclose. These cases hold that "'each party to a contract is bound to disclose to the other all he may know respecting the subject matter materially affecting a correct view of it.'"[6] *Id.* at 296 (quoting *Perkins v. M'Gavock*, 3 Tenn. 415, 417 (1813)); *see also, e.g.*, *Odom v. Oliver*, No. W2008-01145-COA-R3-CV, 2009 Tenn. App. LEXIS 103, at *11 (Tenn. Ct. App. Mar. 17, 2009) ("[C]ontracting parties have a duty to disclose material facts affecting the essence of a contract's subject matter."); *Garrett v. Mazda Motors of America*, 844 S.W.2d 178, 181 (Tenn. Ct. App. 1992) ("[A] seller who induces a purchaser to buy an article of property by . . . concealing a material fact is liable for the damages that are the natural and proximate result of the fraud.").

_____

[6] Although *Simmons* is the touchstone case, the Tennessee Court of Appeals recently noted that "a duty to disclose . . . any material fact affecting the essence of the subject matter of the contract, unless ordinary diligence would have revealed the undisclosed fact," *Bradley v. All Am. Classics of Tenn., Inc.*, No. M2008-01738-COA-R3-CV, 2009 Tenn. App. LEXIS 138, at *10 (Tenn. Ct. App. Apr. 16, 2009) (quoting *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986)), is a "concept [that] goes back almost 200 years in this state." *Id.* at *10-11 (citing *Perkins*, 3 Tenn. at 417).

The Tennessee Court of Appeals has since expanded upon *Simmons*'s formulation. In *Patton v. McHone*, 822 S.W.2d 608 (Tenn. Ct. App. 1991), the court relied on *Simmons* and sections 551 and 552 of the Restatement (Second) of Torts in stating that, even "in the absence of a special relationship," a seller must disclose material information about its product in certain circumstances. *Id.* at 615. Specifically:

> (1) a seller must disclose enough information to prevent its statements from being misleading;
>
> (2) a seller must give accurate answers to a buyer's questions concerning a product's condition;
>
> (3) a seller must disclose any condition or defect that it knows or should know about that renders the product defective or dangerous; and
>
> (4) a seller must disclose basic, material information if it knows that the buyer is about to act without knowledge of the information and is without reasonable means to acquire the information itself.

*Id.* at 615-16 (footnotes omitted). As recently as several months ago, the Tennessee Court of Appeals reaffirmed the vitality of the *Simmons* and noted that the principle of that case "is set forth in Restatement (Second) of Torts § 551."[7] *Guesthouse Int'l, LLC v. Shoney's N. Am.*

---

[7] That section of the Restatement provides:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . .
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make

13

*Corp.*, No. M2008-02567-COA-R3-CV, 2010 Tenn. App. LEXIS 206, at *79-80 (Tenn. Ct. App. Mar. 18, 2010); *see also Goodall v. Akers*, No. M2008-01608-COA-R3-CV, 2009 Tenn. App. LEXIS 294, at *23 n.6 (Tenn. Ct. App. Mar. 3, 2009) (noting that "[s]everal of the Tennessee cases on fraudulent concealment cite with approval § 551(1) of the Restatement (Second) of Torts")

In *Shah*, the Sixth Circuit explained its decision to not apply the *Simmons* line of cases by noting that "these cases have generally been limited to real estate purchases and used car sales." 338 F.3d at 572 n.9 (citations omitted). *Shah* involved a dispute between plaintiff gas station franchisees and the defendant franchisor. The plaintiffs bought an interest in a gas station lease from the previous franchisee after the defendant assured them that, as long as the gas station was performing well, the defendant would not invoke a 30-day termination clause contained in the lease. *Id.* at 561, 563-65. Soon after, however, the defendant sold the gas station and terminated the lease. *Id.* at 565. The defendant had no duty to disclose its intention to sell the station because the court "decline[d] to anticipate that the Tennessee Supreme Court would extend [*Simmons*] to the context of a franchise dispute." *Id.* at 572 n.9.

_____

untrue or misleading a previous representation that when made was true or believed to be so; and . . .

(e)  facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2) (1977).

14

But since *Shah* was decided in 2003, Tennessee courts have repeatedly applied *Simmons* in contexts other than car and real estate sales. *See Guesthouse*, 2010 Tenn. App. LEXIS 206, at *82-87; *Consumer Fin. Servs. (Mgmt.) v. Consumer Fin. Servs. Mgmt., L.L.C.*, No. M2003-02030-COA-R3-CV, 2005 Tenn. App. LEXIS 774 (Tenn. Ct. App. Dec. 9, 2005) (applying *Simmons* to a transaction involving the sale of a business); *see also Body Invest, LLC v. Cone Solvents, Inc.*, No. M2006-01723-COA-R3-CV, 2007 Tenn. App. LEXIS 480, at *16, 24 (Tenn. Ct. App. July 26, 2007) (allowing a fraudulent concealment claim to go forward when the parties were not in a fiduciary relationship; the defendant sold contaminated chemicals to the plaintiff, a tanning products manufacturer). Notably, the fraudulent omission claim in *Guesthouse* centered on whether a hotel business should have informed a service mark holder that it intended to franchise new motels under the service mark. 2010 Tenn. App. LEXIS 206, at *75. Although the court ultimately found no duty to disclose, it applied section 551 of the Restatement and examined whether the intention to franchise motels was a fact "basic" to the relevant license agreement. *Id.* at *82-87.

Given these developments in Tennessee law since the Sixth Circuit's decision in *Shah*, and the fact that *Shah* was not a dispute between a consumer and a seller, this court finds that the *Simmons* line of cases applies to consumer transactions.[8] A seller must "disclose enough information to prevent its statements from being misleading," it must "disclose any condition or defect that it knows or should know about that renders the product defective or dangerous," and

---

[8] Indeed, this line of cases clearly already applies to car sales. It would be an odd result for a duty to disclose material facts to attach to sales of one consumer good (i.e., cars) but not to sales of another (i.e., air cleaners).

it must "disclose basic, material information if it knows that the buyer is about to act without knowledge of the information and is without reasonable means to acquire the information itself." *Patton*, 822 S.W.2d at 615-16.

It is possible that, at the summary judgment stage, the defendant will be able to show that it nevertheless had no duty to disclose information regarding ozone's health effects.[9] But the court will not dismiss the plaintiffs' fraudulent concealment claim simply because the parties were not in a fiduciary relationship.

## IV. Class Allegations

Finally, the defendant has moved to strike the plaintiffs' class allegations,[10] arguing that: (1) the class definition is not sufficiently ascertainable; (2) the Beardens' claim is not typical of the claims of absent class members; (3) individual questions will necessarily predominate the fraud claims; and (4) the proposed nationwide class is not manageable. (Docket No. 28 at 4-7.)

The plaintiffs' proposed class includes "all persons in the United States who have purchased Honeywell F300 Series Electronic Air Cleaners" but excludes "anyone other than Plaintiffs seeking to recover for physical injuries caused by F300's." (Docket No. 26 ¶ 100.) Although the FAC focuses exclusively on health problems that ozone exposure can cause, the plaintiffs allege that the class members, who by definition suffered no physical injuries, "were damaged as a result of purchasing F300's which generated higher levels of ozone gas than

---

[9] The defendant makes the conclusory assertion that, even applying *Patton*, the plaintiffs cannot establish a duty to disclose. (Docket No. 28 at 12-13.) It will have an opportunity to brief the matter in more detail at the summary judgment stage.

[10] Because the plaintiffs cannot maintain their Magnuson-Moss claim on behalf of the class, the only remaining class claims are the fraud claims.

16

Honeywell had represented." (*Id.* ¶ 103.)  The plaintiffs seek recovery "of consideration that . . . other members of the Class paid to purchase the F300's." (*Id.* ¶ 104.)

As they did in response to the defendant's initial Motion to Strike, the plaintiffs argue that the appropriate time to resolve class-related issues is after discovery has been taken and they have moved for class certification.  (Docket No. 33 at 14.)  The court noted in its previous Memorandum that there is precedent for treating a Rule 12(f) motion to strike class allegations as a motion to deny class certification under Rule 23, which governs class actions.  (Docket No. 24 at 18 (citing *Smith v. Bayer Corp. (In re Baycol Prods. Litig.)*, 593 F.3d 716, 721 n.2 (8th Cir. 2010).)  Rule 23 allows the court to "require that the pleadings be amended to eliminate allegations about representation of absent persons."  Fed. R. Civ. P. 23(d)(1)(D).  It also provides that a court must rule on class certification "[a]t an early practicable time," *id.* 23(c)(1)(A), and "[n]othing in the plain language of [the rule] either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009).

The Sixth Circuit has stated that a district court should defer decision on class certification issues and allow discovery "if the existing record is inadequate for resolving the relevant issues."  *In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (citation omitted).  This general rule does not apply if it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23.  (*See* Docket No. 24 at 18 n.13 (collecting cases).)  But if "there has not been class discovery . . . nor extensive briefing on class issues," it is

appropriate to defer decision on reasonably contested class issues. *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.*, No. 3:02-md-1457, 2008 U.S. Dist. LEXIS 107132, at *34 (M.D. Tenn. Nov. 14, 2008). Here, the briefing on class issues is relatively cursory. As discussed below, the court will defer its decision on whether the fraud claims are appropriate for class resolution.

The defendant first argues that the proposed class is not sufficiently ascertainable, citing the Sixth Circuit's decision in *Romberio v. UnumProvident Corp.*, No. 07-6406, 2009 U.S. App. LEXIS 695 (6th Cir. Jan. 12, 2009). In *Romberio*, the defendant insurance company allegedly engaged in a variety of unlawful practices that resulted in the plaintiffs' long-term disability benefits being wrongly denied or terminated. *Id.* at *2-6. The plaintiffs sought to certify a class of all plan participants who had a long-term disability claim denied or terminated "after being subjected to any of the practices alleged in the Complaint." *Id.* at *11.

The Sixth Circuit denied certification because "whether a claim for benefits is *wrongfully* denied depends on a number of factors peculiar to the claimant's case." *Id.* at *17. The court explained:

> [Defining the class to include only people who were subjected to the alleged practices] does little to distinguish between the set of individuals whose claims were properly denied for valid medical reasons and the set of individuals whose claims were improperly denied for profit-driven reasons. Indeed, . . . the only way to distinguish between the two sets of individuals is to engage in individualized fact-finding, and the need for such individualized fact-finding makes the . . . class definition unsatisfactory.

*Id.* at *22. The class could not be certified because "'[t]he existence of an ascertainable class of persons to be represented by the proposed class representatives is an implied prerequisite of

Federal Rule of Civil Procedure 23.'"[11] *Id.* at *23 (quoting *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). Class members should be identifiable "without individualized fact finding," *id.* (quoting *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986)), so a class definition "'is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class." *Id.* (quoting 5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.21[3][c] (3d ed. 2007)).

The defendant here argues that individualized fact-finding will be required to determine which class members, if any, have suffered a cognizable injury. In support, it points to the court's previous resolution of the plaintiffs' class-wide unjust enrichment claim. That claim would have required each class member to prove "'circumstances [showing] that it would be inequitable for'" Honeywell to retain the profits received from that consumer. (Docket No. 24 at 20 (quoting *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).) Because an individual weighing of the equities is the basis of an unjust enrichment claim, such claims are almost *per se* inappropriate for class-wide resolution. (*Id.* at 21 (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).) The court found that the plaintiffs could not maintain their unjust enrichment claim on behalf of the class because "there are undoubtedly many . . . class members who are satisfied with their F300s, or who are at least not

_____

[11] The Sixth Circuit noted that the problem with class definition also "carrie[d] over into problems with typicality." 2009 U.S. App. LEXIS 695, at *23; *see also Cleary v. Philip Morris USA, Inc.*, 265 F.R.D. 289, 293 (N.D. Ill. 2010) ("[T]he likelihood that some significant proportion of class members experienced no injury at all [defeats typicality], at least in a case . . . in which proof of detriment is a necessary element of the claim.").

bothered by its ozone output." (*Id.*)

The defendant argues that, for the same reason, even if Honeywell made fraudulent statements or nondisclosures, many class members have suffered no injury. But it can simultaneously be true that: (1) a given consumer has been satisfied with the performance of his F300, and (2) the consumer would not have bought the F300 in the first place, had he known that it emits a high level of ozone and that ozone is a severe health risk to a portion of the population. This consumer would not have a viable unjust enrichment claim, because his satisfaction with the F300 makes it not inequitable for the defendant to retain its profits. But it is not obvious that the consumer necessarily suffered no injury or that he lacks standing to pursue a fraud claim.[12] Further briefing from the parties on this issue, which they have addressed only in passing, will be beneficial.

Whether individualized inquiry is necessary to determine whether class members would not have bought the F300 but for the alleged fraudulent concealment depends on, among other

_____

[12] In its previous decision, the court favorably cited *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009). In that case, the plaintiff filed a class action alleging that the defendant computer manufacturer fraudulently concealed the existence of a defect that caused some monitors to fail prematurely. *Id.* at *2. The court struck the class allegations, holding that "the class is not ascertainable because it includes members who have not experienced any problems with their [computer] display screens. Such members have no injury and no standing to sue." *Id.* at *18.

But *Hovespian* involved products that might, at some uncertain point in the future, manifest a defect. Here, in contrast, all of the F300s allegedly emit a high amount of ozone. Whether a given purchaser was physically affected depends not on whether their particular unit is defective but on whether that person is sensitive to ozone. In other words, Honeywell was not concealing what might possibly happen to the air cleaners in the future; it was allegedly concealing a present quality of the air cleaners. Moreover, *Hovespian* does not contain a detailed discussion of injury or standing.

things, the amount of ozone the F300 emits and the warnings that the defendant should have disclosed. For example, if the evidence ultimately shows that the F300 emits a large amount of ozone, that a relatively large portion of the population is sensitive to ozone exposure, that such exposure can cause grievous physical consequences, and that Honeywell should have conspicuously disclosed all of this to purchasers, it is possible that individualized inquiry will not be required.[13] Discovery and further briefing are thus necessary to resolve the ascertainability issue.

The defendant also attacks the plaintiffs' ability to meet Rule 23's typicality and predominance requirements. A proposed class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082 (citation omitted); *see also* Fed. R. Civ. P. 23(a)(3). The Sixth Circuit has summarized the "premise" of the typicality requirement: "[A]s goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

The defendant argues that the plaintiffs' claims are not typical because their claims, which allege personal injuries, are covered by the Tennessee Product Liability Act (the

---

[13] The court is mindful that it should not inquire into the merits of the suit at the class certification stage. *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007). Nevertheless, the evidence will inform the court of the factual issues that will be contested at trial. The Supreme Court has stated that, in evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings," because the relevant issues are often "enmeshed" within the legal and factual considerations raised by the litigation. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).

"TPLA"), whereas the absent class members have not suffered personal injuries and are not subject to the TPLA's requirements. Thus, the defendants argue, the proof for the plaintiffs' individual claims will be different than the proof needed by the class. (Docket No. 28 at 4-5.)

But the relevant TPLA section does not apply to the plaintiffs' fraud claims. The TPLA does define "product liability action" as "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the . . . design, . . . warning, instruction, marketing, packaging or labeling of any product," including actions based upon "misrepresentation, concealment, or nondisclosure." Tenn. Code Ann. § 29-28-102(6). It also generally requires product liability plaintiffs to show that the product was "in a defective condition or unreasonably dangerous" when it left the seller, *id.* § 29-28-105(a), a showing that is not required for a common-law fraud claim. But the statute specifically states that this requirement does not apply to "an action based on . . . misrepresentation regarding the chattel." *Id.* 29-28-105(c). Accordingly, the plaintiffs' fraud claims are not atypical on this basis.

The plaintiffs must also show that issues subject to generalized proof predominate over those issues subject to individualized proof. *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *see also* Fed. R. Civ. P. 23(b)(3). If individual reliance is at "the factual core" of a class-wide fraud claim, then common issues do not predominate and class-wide resolution is not appropriate. *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (finding that individual issues predominated when fraud claims "require[d] an individual assessment of what documents the customer reviewed and in what manner, what representations Defendants made to each customer, and whether the customer selected the extended service agreement").

22

Although courts often find that individual questions predominate fraud and fraudulent concealment claims, *see id.*, this is not always the case. *See, e.g., Mell v. Anthem, Inc.*, 264 F.R.D. 312, 321 (S.D. Ohio 2009) (certifying a class over the defendants' objections that individualized reliance issues would predominate); *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 518 (N.D. Ohio 2008) ("Where there are uniform presentations of allegedly misleading information, or common omissions throughout the entire class, especially through form documents, courts have found that the element of reliance may be presumed class-wide, thereby obviating the need for an individualized inquiry of each class member's reliance."). For the reasons already discussed, discovery will allow the court to assess whether individual reliance is at the factual core of the instant plaintiffs' fraud claims.

Finally, the defendant argues that a nationwide class will be unmanageable, because the court will be required to apply the law of each class members' home state. (Docket No. 28 at 6 (citing *In re Bridgestone/Firestone & Ford Motor Co. Tire Litig.*, 138 S.W.3d 202, 208 (Tenn. Ct. App. 2003).) But the defendant does not show any actual conflict among the relevant laws of the various states. This is another issue that will benefit from further briefing.

In sum, it is premature for the court to find that the plaintiffs cannot meet the requirements of Rule 23. It may turn out that the plaintiffs' proposed class should not be certified for some of the reasons the defendant has identified. But until discovery is taken and the matter is fully briefed, the court will defer its decision on these issues.

## CONCLUSION

For all of the reasons discussed above, the defendant's Motion to Dismiss and Motion to

23

Strike will be granted in part and denied in part. The court will dismiss the plaintiffs' individual Magnuson-Moss claim without prejudice and will grant the plaintiffs leave to amend the FAC to add allegations regarding an express warranty or an underlying state-law implied warranty claim. The court will strike the class allegations regarding the Magnuson-Moss claim with prejudice.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge